IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED
2005 AUG 11  P 3: 41

| | |
|---|---|
| ALFA LIFE INSURANCE CORPORATION ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: |
| v. ) | CV: 2:05CV 775-C |
| ) | |
| ADVANTAGE CONSULTING GROUP, INC. AND RICHARD E. KNUTSON ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

### STATEMENT OF THE PARTIES AND JURISDICTION

1.  The Plaintiff, Alfa Life Insurance Corporation ("Alfa"), is an Alabama corporation, incorporated in Alabama with its principal place of business in Montgomery County, Alabama.

2.  The Defendant, Advantage Consulting Group, Inc. ("Advantage"), is believed to be a Wisconsin corporation, incorporated in Wisconsin with its principle place of business in Appleton, Wisconsin.

3.  The Defendant, Richard E. Knutson is over the age of nineteen (19) and believed to be a citizen and resident of Appleton, Wisconsin.

4.  The amount in controversy is in excess of $75,000, exclusive of interest and costs.

### FACTUAL ALLEGATIONS

5.  The Plaintiff adopts and realleges the averments contained in paragraphs one (1) through four (4) of this Complaint as if fully set out herein.

6.  In late 2001, Alfa Life Insurance Corporation made a decision to analyze its life insurance databases and decided to update and streamline its life insurance systems and

databases. Alfa retained the services of Solcorp, who recommended that Alfa convert its data from its various software systems to the Ingenium software system.

7. Solcorp recommended to Alfa that former Solcorp employee, Rick Knutson, should be hired to convert Alfa's life insurance computer systems.

8. Rick Knutson is president of Advantage Consulting Group, Inc., located on 103 W. College Avenue, Suite 702, Appleton, Wisconsin 54911. Advantage has never obtained a certificate of authority to transact business in Alabama and has never been qualified to conduct business in the State of Alabama.

9. On or about November 27, 2001, Rick Knutson and Mark Kimmel of Advantage Consulting Group, Inc., traveled to Alfa's home office in Montgomery, Alabama, for the purpose of presenting their services for Alfa's consideration. Knutson and Kimmel made a Power Point presentation to Alfa representatives at Alfa's home office in Montgomery, Alabama and provided other marketing and informational data to Alfa at that time.

10. During the Power Point presentation and during the time that they were at Alfa's office in Montgomery, Alabama, Knutson represented that Advantage had the requisite skill, experience, and employees to make the conversion from the systems that Alfa had in place, including CFO-based systems, to the Ingenium system. He also represented that Advantage had, in fact, completed many such conversions, including conversions for insurance companies from the systems such as Alfa had to the Ingenium system. These representations were false and the Defendants knew that they were false. Alternatively, they were made recklessly or innocently, but in any event, they were made with the purpose of inducing Alfa to enter into a contract with Advantage.

11. Knutson then requested that Advantage be hired to come to Alfa's offices and do what was generally called a "GAP analysis," the purpose of which would be for

Advantage to analyze and study Alfa's existing systems and make recommendations and estimates of what would be needed for the conversion, including the cost and the time schedule to complete the entire conversion of Alfa's systems to the Ingenium system.

12. Alfa considered Advantage's requests and representations, and based on those representations and requests, did indeed hire Advantage to do the GAP analysis. The GAP analysis was conducted by Advantage at Alfa's home office in Montgomery, Alabama, for a period of approximately three (3) weeks.

13. During the three (3) weeks, Advantage had the opportunity to analyze and evaluate Alfa's database needs. Ultimately, Advantage did in fact analyze Alfa's systems, made a study, and presented a proposal to Alfa that purported to detail all the necessary steps that Advantage would have to take to update Alfa's systems as well as the timeframe and cost projections for those steps.

14. Upon completing the GAP analysis, Advantage represented to Alfa that Advantage could complete the conversion by September 2, 2003, and that the total cost for them to complete the necessary services by that date would be $619,230.00.

15. Based on Advantage's representations that Advantage had the requisite skill, experience, and employees to make the conversion from the systems that Alfa had in place to the Ingenium system and that Advantage had, in fact, completed many such conversions, including conversions for insurance companies from the systems such as Alfa had to the Ingenium system, Alfa reasonably relied on Advantage's misrepresentations as a basis for entering into a contract with Advantage on or about May 8, 2002. A true and correct copy of that contract is attached hereto as Exhibit "A."

16. Under this initial contract, and based upon Advantage's representations, Advantage was to complete the conversion of Alfa's database systems to the Ingenium System by September 2, 2003.

17. However, there were additional tasks that were not included in Advantage's original GAP analysis report that had to be done before the conversion of Alfa's systems could be completed. These additional tasks were not included in Advantage's GAP analysis because Advantage performed a flawed and inadequate GAP analysis.

18. Advantage has failed to complete the data conversion by September 2, 2003, as contemplated and as required by the terms and conditions of Schedule B of the contract.

19. Advantage has also failed to meet numerous milestone deadlines as set forth in Schedules B.1, B.2, B.3, B.4., and B.5.

20. Alfa was without any choice but to agree to extend the deadline to complete the conversion until September 2004. Both parties understood that time was of the essence, but at the requests of Advantage and relying on Advantage's alleged expertise and experience, Alfa granted additional time to Advantage on several occasions throughout the project.

21. Alfa learned that there were many things that needed to be done to get its systems and data converted to Ingenium that Advantage had failed to foresee and failed to include in the original contract. Because Alfa was without any choice, Alfa agreed to modify the contract as set forth in the First Amendment to the Contract, attached hereto as Exhibit "B."

22. Alfa also agreed to pay an extra sum of $200,000.00 for completion of the conversion project.

23. Alfa has paid Advantage in excess of the amount Alfa agreed to pay Advantage for their services.

24. On or about December 28, 2003, Advantage, by and through its agent Knutson, represented to Alfa that Advantage would staff the job with individuals with the requisite skill and expertise to complete the conversion and would take all other necessary steps to have a completely functional Ingenium database system at Alfa by September 2004.

25. In or about January or February of 2005, Alfa learned for the first time, that Knutson's prior representations to induce Alfa to enter into the contract were false, to wit, Advantage did not have the requisite skill, experience, and employees to make the conversion from the systems that Alfa had in place to the Ingenium system and Advantage had not actually completed many such conversions, including conversions for insurance companies from the systems such as Alfa had to the Ingenium system at the time that those representations were made.

26. Advantage has completely and totally failed to complete its contract with Alfa and nothing done by Advantage is functional. The failures to complete the contract specifically include, but are not limited to, the following:

   a. Provide Alfa with programs, programming codes, or mapping tables.

   b. Adequately test and analyze the source data or the conversion programs.

   c. Resolve the cross edit messages.

   d. Adequately test and analyze converted data or load functionality in the Ingenium system.

   e. Provide Alfa with any documentation of the conversion process.

   f. Populate all the tables and records.

   g. Map ALFA legacy fields to Ingenium.

    h. Code/unit test programs.

    i. Test conversion database loads.

    j. Fix errors from testing.

    k. Run cross edit routines.

    l. Support ALFA systems test.

    m. Support ALFA model office test.

    n. Pre-production set-up.

    o. Run the conversion.

    p. Post production support.

    q. Convert all necessary policy data from ALFA's systems, CFO, AS400, LFPS, and underwriting systems to Ingenium 6.3.1.

    r. Maintain the integrity and accuracy of all policy data to have and maintain historical policy information on all policies converted to the Ingenium 6.3.1 system.

27. Advantage has failed to provide the requisite skilled personnel to do and complete the job at Alfa.

28. Advantage has now abandoned its job and the project before the completion of the project.

29. Advantage has failed to supply Alfa with any reasonably useable product, and has willfully refused to provide Alfa with the software programs for any of the work. The programs are not workable at all and cannot be used in their present condition.

30. Alfa estimates that the cost to complete the project that Advantage has abandoned will be in excess of $300,000.

## COUNT ONE

## BREACH OF CONTRACT

31. The Plaintiff adopts and realleges the averments contained in paragraphs one (1) through thirty (30) of this Complaint *in hac verba*.

32. Alfa has at all times material hereto abided by all material terms of the contract.

33. Advantage failed to complete the data conversion in a timely manner according to the terms agreed to between Alfa and Advantage due to its own actions and/or inactions.

34. Advantage has abandoned performance of the contract prior to completion of its contractual obligations.

35. Alfa has suffered damage as a proximate result of Advantage's nonperformance.

**WHEREFORE**, Plaintiff respectfully requests compensatory damages against the Defendants, jointly and severally, in an amount in excess of the jurisdictional limits of this Court.

## COUNT TWO

## RECSISSION OF CONTRACT

36. The Plaintiff adopts and realleges the averments contained in paragraphs one (1) through thirty-five (35) of this Complaint *in hac verba*.

37. Due to the fraudulent misrepresentations by Advantage and Knutson and fraudulent suppression by Advantage and Knutson, both agents for Advantage, that induced Alfa to enter into a contract with Advantage, Alfa hereby rescinds its contract with Advantage *in toto* and demands reimbursement of all payments made to Advantage under the fraudulently induced contract. *See* ALA. CODE § 8-1-2 (1975); *Brabner v. Canton*, 611 So. 2d 1016, 1018 (Ala. 1992); *Lowery v. Mutual Loan Security, Inc.*, 79 So. 389 (Ala. 1918).

**WHEREFORE**, Plaintiff respectfully requests that the subject contract be rescinded *in toto* and declared void *ab initio* and all moneys be refunded plus interest and attorneys' fees.

## COUNT THREE

## BREACH OF EXPRESS WARRANTY

38. The Plaintiff adopts and realleges the averments contained in paragraphs one (1) through thirty-seven (37) of this Complaint *in hac verba*.

39. Advantage warranted to Alfa "that Advantage and its consultants [would] have the necessary skills and expertise to provide the services set forth [in the contract.]" Advantage further warranted that "[t]he services provided by Advantage [would] be delivered in a workmanlike manner, [would] conform to the standards generally observed in the industry for similar services and [would] be provided with reasonable skill and care." (*See* Exhibit "B," Schedule F).

40. Advantage did not provide Alfa with consultants with the necessary skills or expertise to provide the services set forth in the contract. Advantage failed to deliver services in a workmanlike manner, failed to conform to the standards generally observed in the industry for similar services, and failed to provide services with reasonable skill or care.

41. As a proximate result of Advantage's breach of its express warranty, Alfa has suffered severe damages.

**WHEREFORE**, Plaintiff respectfully requests compensatory and punitive damages against the Defendants, jointly and severally, in an amount in excess of the jurisdictional limits of this Court.

## COUNT FOUR

## UNJUST ENRICHMENT

42.     The Plaintiff adopts and realleges the averments contained in paragraphs one (1) through forty-one (41) of this Complaint *in hac verba*.

43.     The Plaintiff was billed for work that was not properly done and paid Advantage close to one million dollars ($913,913.63) due to the fraudulent misrepresentations by Advantage and its agents.

44.     The Plaintiff was billed for work that was not properly done and paid Advantage close to one million dollars ($913,913.63) upon the mistaken belief that Advantage and its agents were performing their duties as reasonably prudent persons and were acting in good faith and fair dealing.

45.     Advantage holds money that in equity and good conscience belongs to Alfa.

**WHEREFORE**, Plaintiff respectfully requests compensatory and punitive damages against the Defendants, jointly and severally, in an amount in excess of the jurisdictional limits of this Court.

## COUNT FIVE

## WILLFUL MISREPRESENTATION

46.     The Plaintiff adopts and realleges the averments contained in paragraphs one (1) through forty-five (45) of this Complaint *in hac verba*.

47.     On or about November 27, 2001, Advantage, by and through its agent Knutson and/or other agents, servants, or employees, gave a Power Point presentation to Alfa and discussed with Alfa the possibility of converting Alfa's database systems to the Ingenium System.

48. At that time, Advantage, by and through its agent Knutson and/or other agents, servants, or employees represented to the Plaintiff: a.) that Advantage had a significant amount of actual experience in CFO-based insurance databases and in converting such data into the Ingenium system; b.) that Advantage had the requisite skill, experience, and employees to make the conversion from the systems that Alfa had in place, including CFO-based systems, to the Ingenium system; and c.) that Advantage would get Alfa's conversion from the old systems to the new system up and running by September 2003.

49. The above representations were false, concerned then-existing material facts, and were made by Advantage and its agent Knutson or other agents with the knowledge or belief that the above representations were false.

50. The Plaintiff believed the Defendants' willful misrepresentations and in reasonable reliance upon them entered into the contract with Advantage, paid Advantage moneys in excess of what Advantage was entitled, and agreed to modify the contract with Advantage to include extra services and extensions of time.

**WHEREFORE**, Plaintiff respectfully requests compensatory damages against the Defendants, jointly and severally, in an amount in excess of the jurisdictional limits of this Court.

## COUNT SIX

### RECKLESS MISREPRESENTATION

51. The Plaintiff adopts and realleges the averments contained in paragraphs one (1) through fifty (50) of this Complaint *in hac verba*.

52. On or about November 27, 2001, Advantage, by and through its agent Knutson and/or other agents, servants, or employees, gave a Power Point presentation to Alfa and

discussed with Alfa the possibility of converting Alfa's database systems to the Ingenium System.

53. At that time, Advantage, by and through its agent Knutson and/or other agents, servants, or employees represented to the Plaintiff: a.) that Advantage had a significant amount of actual experience in CFO-based insurance databases and in converting such data into the Ingenium system; b.) that Advantage had the requisite skill, experience, and employees to make the conversion from the systems that Alfa had in place, including CFO-based systems, to the Ingenium system; and c.) that Advantage would get Alfa's conversion from the old systems to the new system up and running by September 2003.

54. The above representations were false, concerned then-existing material facts, and were made recklessly made by Advantage and its agent Knutson or other agents without knowledge of the true facts.

55. The Plaintiff believed the Defendants' reckless misrepresentations and in reasonable reliance upon them entered into the contract with Advantage, paid Advantage moneys in excess of what Advantage was entitled, and agreed to modify the contract with advantage to include extra services and extensions of time.

**WHEREFORE**, Plaintiff respectfully requests compensatory and punitive damages against the Defendants, jointly and severally, in an amount in excess of the jurisdictional limits of this Court.

## COUNT SEVEN

## INNOCENT MISREPRESENTATION

56. The Plaintiff adopts and realleges the averments contained in paragraphs one (1) through fifty-five (55) of this Complaint *in hac verba*.

57. On or about November 27, 2001, Advantage, by and through its agent Knutson and/or other agents, servants, or employees, gave a Power Point presentation to Alfa and discussed with Alfa the possibility of converting Alfa's database systems to the Ingenium System.

58. At that time, Advantage, by and through its agent Knutson and/or other agents, servants, or employees represented to the Plaintiff: a.) that Advantage had a significant amount of actual experience in CFO-based insurance databases and in converting such data into the Ingenium system; b.) that Advantage had the requisite skill, experience, and employees to make the conversion from the systems that Alfa had in place, including CFO-based systems, to the Ingenium system; and c.) that Advantage would get Alfa's conversion from the old systems to the new system up and running by September 2003.

59. The above representations were false, concerned then-existing material facts, and were mistakenly made by Advantage and its agent Knutson or other agents but with the intention that Alfa should rely upon them.

60. The Plaintiff believed the Defendants' innocent misrepresentations and in reasonable reliance upon them entered into the contract with Advantage, paid Advantage moneys in excess of what Advantage was entitled, and agreed to modify the contract with advantage to include extra services and extensions of time.

**WHEREFORE**, Plaintiff respectfully requests compensatory and punitive damages against the Defendants, jointly and severally, in an amount in excess of the jurisdictional limits of this Court.

## COUNT EIGHT

## SUPPRESSION

61. The Plaintiff adopts and realleges the averments contained in paragraphs one (1) through sixty (60) of this Complaint *in hac verba*.

62. By virtue of Advantage's position as a computer consulting group, and Knutson's position as president of Advantage, Advantage, and Knutson, had a duty to disclose the following to the Plaintiffs: a.) that Advantage had little-to-no experience in converting computer systems such as Alfa's to Ingenium and b.) the true amount of time and expense that it would take for Advantage to convert Alfa's database systems.

63. Advantage, by and through its agent, Knutson, concealed or failed to disclose the above facts in order to induce the Plaintiff to enter into a contract with Advantage and with the intention of inducing the Plaintiff to grant Advantage additional time to complete the project, enter into subsequent contracts, and pay Advantage additional money for extra services.

64. As a proximate and direct consequence of the Defendants' suppression, the Plaintiff was caused severe damages.

**WHEREFORE**, Plaintiff respectfully requests compensatory and punitive damages against the Defendants, jointly and severally, in an amount in excess of the jurisdictional limits of this Court.

## COUNT NINE

## NEGLIGENCE

65. The Plaintiff adopts and realleges the averments contained in paragraphs one (1) through sixty-four (64) of this Complaint *in hac verba*.

66.  The Defendants, Advantage and Richard Knutson failed to act as reasonably prudent persons in performing the services that Alfa contracted with them to perform.

67.  The Defendants' breach of their duty caused Alfa to suffer severe damages.

**WHEREFORE**, Plaintiff respectfully requests compensatory damages against the Defendants, jointly and severally, in an amount in excess of the jurisdictional limits of this Court.

_____
WILLIAM P. GRAY, JR. (ASB-5268-R78W)
DOUGLAS N. ROBERTSON (ASB-1128-O76R)
Attorneys for Plaintiff,
Alfa Life Insurance Corporation

OF COUSEL:

GRAY & ASSOCIATES, L.L.C.
3800 Colonnade Parkway, Suite 545
Birmingham, Alabama 35243
Phone (205) 968-0900
Facsimile (205) 968-6534