**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| ALFA LIFE INSURANCE CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV-05-775-MHT |
| | ) | |
| ADVANTAGE CONSULTING GROUP, INC. | ) | |
| and RICHARD E. KNUTSON, | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER AND COUNTERCLAIM OF DEFENDANT**
**ADVANTAGE CONSULTING GROUP, INC.**

Defendant Advantage Consulting Group, Inc. ("Advantage") responds as follows to Plaintiff Alfa Life Insurance Corporation's ("Alfa") Complaint:

**<u>ANSWER</u>**

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    Admitted.

5.    Defendant incorporates its responses to the paragraphs set forth above.

6.    Admitted.

7.    Defendant admits that Solcorp recommended to Alfa that Knutson should be hired to convert Alfa's systems.  Defendant denies the remaining allegations of paragraph 7.

8.    Defendant admits that Knutson is president of Advantage.  Defendant admits that Advantage is located on 103 W. College Avenue, Appleton, Wisconsin 54911.  Defendant admits that Advantage has not obtained a certificate of authority to transact business in Alabama.

9.    Admitted.

10.    Defendant admits that Knutson represented that Advantage had the requisite skill, experience, and employees to make the conversion from Alfa's systems to the Ingenium system. Defendants deny the remaining allegations of paragraph 10.

11.    Defendant admits that Knutson requested that Advantage be hired to perform a preliminary data conversion analysis at Alfa's office.   Defendant denies the remaining allegations of paragraph 11.

12.    Denied.

13.    Defendant admits that Alfa hired Advantage to perform a preliminary data conversion analysis, which was conducted by Advantage at Alfa's home offices in Montgomery, Alabama.  Defendant denies the remaining allegations of paragraph 13.

14.    Defendant admits that Advantage ultimately entered into a contract with Alfa, providing an estimated Project End Date of September 2, 2003, and a price of $619,230.00. Defendant denies the remaining allegations of paragraph 14.

15.    Defendant admits that Advantage represented that it had the requisite skill, experience, and employees to make the conversion from the systems that Alfa had in place to the Ingenium system.  Defendant admits that a contract was executed by Advantage and Alfa on or about May 8, 2002.  Defendant denies the remaining allegations of paragraph 15, and states that the contract attached to the Complaint as Exhibit A is incomplete.

16.    Defendant asserts that the contract is the best evidence, and speaks for itself.  For that reason, Defendant denies the allegations of paragraph 16.

17.    Denied.

18.    Denied.

19.    Denied.

20.     Denied.

21.     Defendant lacks sufficient information to form a belief as to the truth of the allegations contained in paragraph 21, and therefore denies them.

22.     Defendant asserts that the contract is the best evidence, and speaks for itself.  For that reason, Defendant denies the allegations of paragraph 22.

23.     Denied.

24.     Defendant admits that, on or about December 28, 2003, Knutson represented to Alfa that Advantage would staff the job with individuals with the requisite skill and expertise to complete the conversion.  Defendant denies the remaining allegations of paragraph 24.

25.     Denied.

26.     Denied.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Defendant incorporates its responses to the referenced paragraphs set forth above.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Defendant incorporates its responses to the referenced paragraphs set forth above.

37.     Denied.

38.     Defendant incorporates its responses to the referenced paragraphs set forth above.

3

39.    Defendant asserts that the contract is the best evidence, and speaks for itself.  For that reason, Defendant denies the allegations of paragraph 39.

40.    Denied.

41.    Denied.

42.    Defendant incorporates its responses to the referenced paragraphs set forth above.

43.    Denied.

44.    Denied.

45.    Denied.

46.    Defendant incorporates its responses to the referenced paragraphs set forth above

47.    Admitted.

48.    Defendant admits that Advantage represented to Alfa that it had the requisite skill, experience, and employees to make the conversion from the systems that Alfa had in place to the Ingenium system.  Defendant denies the remaining allegations of paragraph 48.

49.    Denied.

50.    Denied.

51.    Defendant incorporates its responses to the referenced paragraphs set forth above.

52.    Admitted.

53.    Defendant admits that Advantage represented to Alfa that it had the requisite skill, experience, and employees to make the conversion from the systems that Alfa had in place to the Ingenium system.  Defendant denies the remaining allegations of paragraph 53.

54.    Denied.

55.    Denied.

56.    Defendant incorporates its responses to the referenced paragraphs set forth above.

4

57.    Admitted.

58.    Defendant admits that Advantage represented to Alfa that it had the requisite skill, experience, and employees to make the conversion from the systems that Alfa had in place to the Ingenium system.  Defendant denies the remaining allegations of paragraph 58.

59.    Denied.

60.    Denied.

61.    Defendant incorporates its responses to the referenced paragraphs set forth above.

62.    Denied.

63.    Denied.

64.    Denied.

65.    Defendant incorporates its responses to the referenced paragraphs set forth above.

66.    Denied.

67.    Denied.

68.    Any allegations made by Alfa in its Complaint not expressly admitted or denied herein are hereby denied.

## <u>DEFENSES</u>

### First Affirmative Defense

The Complaint fails to state a claim against Defendant upon which relief can be granted.

### Second Affirmative Defense

Defendant pleads the defense of waiver.

### Third Affirmative Defense

Defendant pleads the defense of estoppel.

**Fourth Affirmative Defense**

Defendant pleads the defense of unclean hands.

**Fifth Affirmative Defense**

Alfa breached its contractual obligations by failing to give Defendant notice before termination as required by the express terms of the contract between the parties.

**Sixth Affirmative Defense**

Defendant avers that any award of punitive damages to Alfa in this case will be violative of the constitutional safeguards provided to Defendant under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States in that punitive damages are vague and are not rationally related to legitimate government interests.

**Seventh Affirmative Defense**

Defendant avers that any award of punitive damages to Alfa in this case will be violative of Article I, Section 6 of the Constitution of the State of Alabama which provides that no person shall be deprived of life, liberty, or property except by due process of law, in that punitive damages are vague and are not related to legitimate government interests.

**Eighth Affirmative Defense**

Defendant avers that any award of punitive damages to the Plaintiff in this case will be violative of the procedural safeguards provided to Defendant under the Sixth Amendment to the Constitution of the United States of America in that punitive damages are penal in nature and, consequently, Defendant is entitled to the same procedural safeguards afforded to criminal defendants.

**Ninth Affirmative Defense**

Defendant avers that it is violative of the self-incrimination clause of the Fifth Amendment to the Constitution of the United States of America to impose punitive damages

6

against it, which are penal in nature, yet compel it to disclose potentially incriminating documents and evidence.

## Tenth Affirmative Defense

Defendant avers that it is violative of the rights guaranteed by the Constitution of the United States of America and the Constitution of the State of Alabama to impose punitive damages against Defendant, which are penal in nature, by requiring a burden of proof on Alfa which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases.

## Eleventh Affirmative Defense

Defendant avers that any award of punitive damages to Alfa in this case will be violative of the Eighth Amendment to the Constitution of the United States of America in that the damages would be an excessive fine in violation of the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

## Twelfth Affirmative Defense

Defendant avers that any award of punitive damages to Alfa in this case will be violative of Article I, Section 15 of the Constitution of the State of Alabama 1901, in that the damages would be an excessive fine.

## Thirteenth Affirmative Defense

Alfa's claim for punitive damages violates the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution of the United States, on the following separate and several grounds:

(1)    It is a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution to impose punitive damages, which are penal in nature, against a civil defendant upon the Plaintiff satisfying a burden of proof which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

7

(2)     The procedure pursuant to which punitive damages are awarded fails to provide a reasonable limit on the amount of an award against Defendant, which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

(3)     The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of the award of punitive damages which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

(4)     The procedures pursuant to which punitive damages are awarded result in the imposition of different penalties for the same or similar acts and, thus, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(5)     The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the maximum criminal fine for the same or similar conduct, which thereby infringes the Due Process Clause of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; and

(6)     The procedures pursuant to which punitive damages are awarded permit the imposition of excessive fines in violation of the Eighth Amendment of the United States Constitution.

**Fourteenth Affirmative Defense**

The Plaintiff's claim for punitive damages violates the Due Process Clause of Article 1, Section 6 of the Constitution of Alabama on the following separate and several grounds:

(1)     It is a violation of the Due Process Clause to impose punitive damages, which are penal in nature, upon a civil defendant upon the Plaintiff satisfying a burden of proof less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

(2)     The procedures pursuant to which punitive damages are awarded fail to provide a limit on the amount of the award against Defendant;

(3)     The procedures pursuant to which punitive damages are awarded are unconstitutionally vague;

(4)     The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of punitive damages;

(5)     The award of punitive damages in this case would constitute deprivation of property without due process of law;

(6)     The procedures permit the award of punitive damages upon satisfaction of a reduced standard of proof;

(7)     The procedures fail to provide a clear and consistent appellate standard of review of any award of punitive damages; and

(8)     The procedures permit the admission of evidence relative to punitive damages in the same proceedings during which liability and compensatory damages are determined;

### Fifteenth Affirmative Defense

The award of punitive damages to Alfa in this action would constitute a deprivation of property without due process of law required under the Fifth and Fourteenth Amendments of the United States Constitution.

### Sixteenth Affirmative Defense

The procedures pursuant to which punitive damages are awarded permit the imposition of an excessive fine in violation of Article l, Section 15 of the Constitution of the State of Alabama.

### Seventeenth Affirmative Defense

The claims of Alfa for punitive damages cannot be sustained because an award of punitive damages under Alabama law subject to no pre-determined limit on the amount of

9

punitive damages that a jury may impose, violates Defendant's due process rights guaranteed for the Fourteenth Amendment to the United States Constitution and by the due process of the provisions of the Alabama Constitution.

### Eighteenth Affirmative Defense

The claims of Alfa for punitive damages cannot be sustained because under Alabama law, (1) the jury is not provided a standard sufficient for determining the appropriateness, or the appropriate size, or a punitive damages award, (2) the jury is not instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment, (3) the jury is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including the corporate status of Defendant, (4) the jury is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary as to damages permissible, and (5) the award is not subject to judicial review on the basis of objective standards, would violate Defendant's procedural due process and equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution and the double jeopardy clause of the Fifth Amendment as incorporated into the Fourteenth Amendment, and by the Alabama constitutional provisions providing for the due process, equal protection, and guarantee against double jeopardy.

### Nineteenth Affirmative Defense

Any award of punitive damages based on anything other than Defendant's conduct in connection with the matters that are the subject of this lawsuit would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Double Jeopardy Clause of the Fifth Amendment as incorporated into the Fourteenth Amendment and the Alabama constitutional provisions providing for due process and guarantee against double

10

jeopardy, because judgment of punitive damages in this case cannot protect Defendant against impermissible multiple punishment for the same wrong.

## Twentieth Affirmative Defense

Any award of punitive damages in this case would violate Defendant's rights under the substantive and procedural Due Process Clause of the United States Constitution and the Constitution of the State of Alabama; the excessive fines clauses of the Eighth Amendment to the United States Constitution; the contract clause of Article Two of the United States Constitution; the Equal Protection Clause of the United States Constitution and the Constitution of the State of Alabama.

## Twenty-first Affirmative Defense

The Alabama punitive damages system, on its face and as applied, violates the Due Process Clause of the Fourteenth Amendment because there are absolutely no meaningful standards or limits for determining the amount of the award, contravening the deeply rooted American traditional that punishment may not be imposed in the absence of a pre-existing, express legislatively-established range of penalties.

## Twenty-second Affirmative Defense

The imposition of a punitive damages award in this case in the absence of explicit, particularized guidelines or standards is highly unfair and constitutionally infirm because an award made in the absence of such guidelines or standards may be grossly excessive, disproportionate, arbitrary and irrational. A punitive damages award in the absence of such guidelines or standards will bear no rational or reasonable relationship to Defendant's alleged conduct in this matter or to any alleged harm to the Plaintiff, and may dwarf legislatively-established fines for comparable conduct. A punitive damages award in the absence of such guidelines or standards therefore will violate the Due Process Clause of the Fourteenth

11

Amendment to the United States Constitution, and the excessive fines clause in violation of Article I, § 15 of the Alabama Constitution.

### Twenty-third Affirmative Defense

Defendant's lack of a certificate of authority to transact business in Alabama in no way prejudices its defense of Alfa's claims, given the interstate activity involved in the transactions between the parties, based on the Commerce Clause of the U.S. Constitution.

### Twenty-fourth Affirmative Defense

Defendant is not liable under Alfa's claims because of Solcorp's and Alfa's failure to timely complete the modification tasks.

### Twenty-fifth Affirmative Defensive

Defendant fully performed under the Contract.

### Twenty-sixth Affirmative Defense

All or a portion of monies claimed by Alfa are set off by monies owed to Defendant by Alfa.

### Twenty-seventh Affirmative Defense

Alfa is not entitled to a claim of unjust enrichment because of the existence of an express contract between the parties.

### Twenty-eighth Affirmative Defense

There is no factual or legal basis for Alfa's claim for rescission of the Contract.

### <u>COUNTERCLAIM</u>

### <u>Statement of Parties and Jurisdiction</u>

1.     Counterclaimant Advantage is a Wisconsin corporation, with its principle place of business in Appleton, Wisconsin.

2.      Counterclaim Defendant Alfa, is an Alabama corporation, with its principle place of business in Montgomery, Alabama.

3.      The amount in controversy is in excess of $75,000, exclusive of interest and costs.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**Factual Allegations**

5.      In late 2001, Alfa made a decision to analyze its life insurance databases and decided to update and streamline its life insurance systems and databases.  Alfa retained the services of Solcorp, who recommended that Alfa convert its data from its various software systems to the Ingenium system ("Ingenium").

6.      According to an August 1, 2001 press release, Alfa hired Solcorp to replace its CFO-based system, which managed all of its product lines and portfolios, with Ingenium.

7.      Ingenium is a high-performance, web services-enabled policy administration system that scales to high-volume environments.

8.      Ingenium's software package has a complicated data structure with hundreds of database tables and thousands of computer programs.  Typical installation projects of Ingenium take between twelve (12) and twenty-four (24) months, and involve twenty (20) to forty (40) computer programmers and computer analysts to perform the hundreds of tasks that are required. These hundreds of tasks can be grouped into five major categories:  (1) modifications; (2) interfaces; (3) data conversion; (4) configuring insurance products and other system parameters; and (5) comprehensive integrated testing.

9.      Solcorp recommended to Alfa that Knutson should be hired to convert Alfa's life insurance computer systems.

10.     Pursuant to Solcorp's recommendation, in or around November 2001, Alfa contacted Advantage regarding performing the data conversion tasks for the Ingenium installation.

11.     On or about November 27, 2001, Rich Knutson and Mark Kimmell of Advantage traveled to Alfa's home office in Montgomery, Alabama, for the purpose of presenting their services for Alfa's consideration.  Knutson and Kimmell made a Power Point presentation to Alfa representatives at Alfa's home office in Montgomery, Alabama and provided other marketing and informational data to Alfa at this time.

12.     Alfa subsequently retained Advantage to perform a four-week preliminary data conversion analysis, in which Advantage initially determined the requisite data conversion tasks and the estimated completion date.

13.     Following this preliminary data conversion analysis, Alfa entered into a contract with Advantage on February 25, 2002 (the "Contract"), whereby Advantage would perform all data conversion tasks, including but not limited to, analyzing, scrubbing, translating, and converting Alfa's insurance policy data from Alfa's CFO-based system to Ingenium.   The expiration date for the Contract was February 25, 2004.  A copy of the Contract, including all associated schedules, is attached hereto as Exhibit 1.

14.     The Contract estimated a Project End Date of September 2, 2003, and included a Fixed Price Agreement covering all initially identified tasks.  *See* Exhibit 1, Schedule B at page 2.  The Fixed Price Agreement provided for payment of $619,230.00 for the data conversion tasks, and stated that "Advantage shall invoice Alfa at the beginning and end of each task, as defined in Schedule B.1, 50% of each task payable at the start of the task, and 50% payable 30

14

days after completion and Alfa verification that each task is completed and functioning properly." *See* Exhibit 1, Schedule B at page 3.

15.     The Contract further provides that, "if the Project End Date is changed to a date later than September 2, 2003, [Advantage] reserves the right to invoice additional fees over the agreed upon fixed price agreement" *See* Exhibit 1, Schedule B at page 2**.**

16.     Advantage discussed all provisions of the Contract, including the Fixed Price Agreement, with William B. Harper, Jr. ("Mr. Harper") the Senior Vice President of Operations at Alfa, who signed on behalf of Alfa.

17.     The Contract is expressly limited to Advantage's performance of data conversion tasks. Advantage was hired to perform these data conversion tasks exclusively, and was not involved with any other installation tasks. Alfa and/or Solcorp were responsible for all other installation tasks, including but not limited to all modifications tasks. The respective tasks of Alfa, Solcorp, and Advantage are spelled out on a chart, which is attached hereto as Exhibit 2.

18.     Advantage began performing the data conversion tasks pursuant to the Contract and associated schedules, and was partially compensated by Alfa for the services performed pursuant to the Fixed Price Agreement.

19.     Before Advantage could fully perform the data conversion tasks, Alfa and Solcorp needed to heavily modify Ingenium to support the conversion of Alfa's insurance policy data from the CFO-based system and other internal systems.

20.     Advantage's performance and completion of the data conversion tasks were directly limited by Alfa's and Solcorp's completion of the modifications tasks.

21.     Alfa's and Solcorp's failure to complete the modifications tasks prevented Advantage from completing all data conversion tasks, and from fulfilling their contractual obligations before the initial Project End Date of September 2, 2003.

22.     Alfa agreed to execute an amendment to the Contract ("New Contract"), extending the Contract's expiration term from February 25, 2004 to December 31, 2004.  *See* New Contract, attached hereto as Exhibit 3.

23.     Simultaneous to the execution of the New Contract, Alfa and Advantage entered into a new Consulting Services Agreement ("Consulting Agreement").  *See* Exhibit 3, Schedule F.

24.     The Consulting Agreement states that, "[d]ue to the delay of the Solcorp project, through no fault of Advantage or Alfa, not all services set forth in the Schedules were performed within the time frame originally agreed upon by Advantage and Alfa."  *See* Exhibit 3, Schedule F at page 1.

25.     Alfa recognized that Advantage's inability to meet the initial Project End Date was caused by Alfa's and Solcorp's failure to complete the modifications tasks, and not due to any action and/or inaction on the part of Advantage.

26.     The Consulting Agreement also states that "Advantage will invoice Alfa $1,000 per day for the work set forth … until completed up to the 200 days and up to a maximum of $200,000."  *See* Exhibit 3, Schedule F at page 2.

27.     The Consulting Agreement further provides the revised Project Start Date of September 3, 2003 and Project End Date of August 1, 2004.

28.    The Consulting Agreement states that, "[i]f the production conversion date is delayed beyond September 1, 2004, through no fault of Advantage, a new agreement will be negotiated to cover additional days."  *See* Exhibit 3, Schedule F at page 1.

29.    The modifications tasks for the Ingenium installation were not completed by Alfa and Solcorp by the revised Project End Date of August 1, 2004.

30.    Advantage was thereby prevented from completing the data conversion tasks.

31.    As the revised Project End Date's delay was brought about through no fault of Advantage, Advantage attempted to negotiate another contract with Alfa ("Proposed Contract").

32.    Despite repeated requests by Advantage during the latter part of 2004 and 2005, Alfa refused to enter into the Proposed Contract with Advantage.

33.    During this time, Alfa represented to Advantage that the modifications tasks were nearly finished, that the true Project End Date was only a couple of months away, and that Alfa would shortly agree to enter into a new contract with Advantage.

34.    In good faith reliance on Alfa's representations, Advantage continued to perform the data conversion tasks for Alfa.

35.    On April 20, 2005, Advantage sent Alfa an e-mail requesting payment of unpaid invoices, and notified Alfa that if such invoices remained unpaid, Advantage would discontinue its performance of the data conversion tasks.

36.    That same day, Alfa responded by e-mail that Mr. Harper was out of town until May 4, 2005, but would contact Advantage upon his return.

37.    On April 26, 2005, Advantage sent Alfa an e-mail agreeing to discuss its relationship with Alfa upon Mr. Harper's return, but stating that if Mr. Harper did not contact

Advantage by May 9, 2005, Advantage would discontinue its performance of the data conversion tasks.

38.     That same day, Alfa again responded by e-mail that Mr. Harper would contact Advantage upon his return.

39.     Upon Mr. Harper's return, Advantage and Alfa discussed Advantage's continued performance of the data conversion tasks.  During this conversation, Alfa again stated that it would pay Advantage for its services, and would enter into the Proposed Contract.

40.     In or around the beginning of June 2005, Alfa compelled Advantage's technical conversion consultant, on-site briefly to finishing the remaining tasks for a trial conversion, to leave the Alfa property, thereby terminating its contractual relationship with Advantage without the thirty (30) days prior notice required by the Contract and specifically incorporated by the New Contract.  *See* Exhibit 1 at page 5, section 10; Exhibit 3 at page 1.

41.     Following this termination, on or about June 27, 2005, Advantage e-mailed a letter to Alfa listing options for continued support.  Alfa never responded to that letter.

42.     Alfa never paid Advantage for all of the services performed, the balance owed which totals  $301,456.78.

## COUNT ONE

## Quantum Meruit

43.     Defendant adopts and incorporates paragraphs 1 through 42 as if fully set forth herein.

44.     After August 2004, pursuant to Alfa's representations that it would either sign a new contract or remunerate Advantage for its continued services, Advantage performed the data conversion tasks for approximately nine (9) months.

18

45.     Alfa accepted and enjoyed the benefit of Advantage's performance of these data conversion tasks.  Advantage is entitled to compensation for all of the services and designs it furnished to Alfa during that time.

46.     By knowingly and voluntarily requesting and accepting the data conversion tasks, Alfa expressly and impliedly promised to pay a reasonable sum to Advantage, for which Advantage has not been paid.

47.     Advantage has made repeated demands upon Alfa for payment due and owing to Advantage for performance of the data conversion tasks.  Alfa has wholly failed, neglected, or refused to compensate Advantage for the services performed.

## COUNT TWO

### Fraudulent Misrepresentation

48.     Defendant adopts and incorporates paragraphs 1 through 47 as if fully set forth herein.

49.     After August 2004, Alfa represented that the Ingenium installation was almost completed, and that Alfa would either enter into a new contract with Advantage for the date conversion tasks it was continuing to perform, or would compensate Advantage for such services.

50.     Said representations were false and Alfa knew they were false, or without knowledge of the true facts, Alfa misrepresented the facts or made such representations by mistake, with the knowledge and intent that Defendant would and should rely upon such representations.

51.     Defendant relied on these representations to its detriment.

B ALW 705055 v2
2900506-000001 03/31/2006

52.     As a proximate result of the fraudulent misrepresentations of Alfa, Defendant suffered and continues to suffer substantial damages.

## COUNT THREE

## Fraudulent Suppression

53.     Defendant adopts and incorporates paragraphs 1 through 52 as if fully set forth herein.

54.     Alfa suppressed the fact that the project was not close to completion, that it was not going to enter into a new contract with Advantage, and that it was not going to compensate Advantage for the data conversion services performed.

55.     Alfa failed to disclose these material facts, which it had a duty to disclose.

56.     As a proximate result of the fraudulent suppression by Alfa, Defendant suffered substantial damages.

## COUNT FIVE

## Breach of Contract

57.     Defendant adopts and incorporates paragraphs 1 through 56 as if fully set forth herein.

58.     Pursuant to Section 8.1 of the Contract, as incorporated by the New Contract, and by quasi-contract (the "Contracts"), Alfa was required to give Defendant thirty (30) days written notice by certified mail, return receipt requested, prior to termination.

59.     Defendant performed all of its obligations under the Contracts.

60.     In or around June 2005, Alfa terminated its relationship with Defendant without giving thirty (30) days written notice as required by the Contracts.

61.     Defendant has suffered damage as a proximate result of Alfa's nonperformance.

WHEREFORE, Defendant requests this Court deem its Answer good and sufficient, and hereby demands judgment against Alfa on its Counterclaim for compensatory damages in the amount of $301,456.78 for unpaid invoices, punitive damages, plus attorneys' fees, interest, costs and such other, further or different relief which Defendant may be entitled.


**JURY DEMAND**

**DEFENDANT DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS AND DEFENSES**


/s/ J. Forrest Hinton _____
J. FORREST HINTON
ANNE L. WOHLFELD

Attorneys for Defendants Advantage Consulting
Group, Inc. and Richard E. Knutson

OF COUNSEL:

BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.
A Professional Corporation
420 North 20th Street, Suite 1600
Wachovia Tower
Birmingham, Alabama 35203-5202
(205) 328-0480

B ALW 705055 v2
2900506-000001 03/31/2006

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2006,  I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, that all parties are represented by counsel to whom the CM/ECF system will send a Notice of Electronic Filing.  Pursuant to Section II(B)(1)(a) of this Court's Administrative Procedures for Filing, Signing and Verifying Pleadings in the District Court Under the Case Management/Electronic Case Files (CM/ECF) System, such notice is the equivalent of service by hand delivery.

Mr. William P. Gray, Jr.
Mr. Douglas N. Robertson
Gray & Associates, L.L.C.
3800 Colonnade Parkway, Suite 545
Birmingham, Alabama 35243

/s/ J. Forrest Hinton_____
OF COUNSEL