# EXHIBIT "A"

Case 2:05-cv-00775-MHT-CSC    Document 43-2    Filed 06/01/2006    Page 1 of 9

B JFB 711773 v1
2900506-000001 06/01/2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| ALFA LIFE INSURANCE CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV-05-775-MHT |
| | ) | |
| ADVANTAGE CONSULTING GROUP, INC. | ) | |
| and RICHARD E. KNUTSON, | ) | |
| | ) | |
| Defendants. | ) | |

**THIRD-PARTY COMPLAINT OF DEFENDANT / COUNTERCLAIMANT / THIRD-PARTY PLAINTIFF ADVANTAGE CONSULTING GROUP, INC.**

Defendant / Counterclaimant / Third-Party Plaintiff Advantage Consulting Group, Inc. ("Advantage") files this Third-Party Complaint against EDS Solcorp, a wholly-owned subsidiary of EDS ("Solcorp"):

**Statement of Parties and Jurisdiction**

1. Third-Party Plaintiff Advantage is a Wisconsin corporation with its principal place of business in Appleton, Wisconsin.

2. Third-party Defendant Solcorp is a Canadian corporation with its principal place of business in Toronto, Canada and U.S. offices in Downers Grove, Illinois.

3. The amount in controversy is in excess of $75,000, exclusive of interest and costs.

4. Jurisdiction is proper under 28 U.S.C. §§ 1332 and 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**Factual Allegations**

2

5. In late 2001, Alfa Life Insurance Corporation ("Alfa") made a decision to analyze its life insurance databases and decided to update and streamline its life insurance systems and databases. Alfa retained the services of Solcorp, who recommended that Alfa convert its data from its various software systems to the Ingenium system ("Ingenium").

6. According to an August 1, 2001 press release, Alfa hired Solcorp to replace its CFO-based system, which managed all of its product lines and portfolios, with Ingenium.

7. Ingenium is a high-performance, web services-enabled policy administration system that scales to high-volume environments.

8. Ingenium's software package has a complicated data structure with hundreds of database tables and thousands of computer programs. Typical installation projects of Ingenium take between twelve (12) and twenty-four (24) months, and involve twenty (20) to forty (40) computer programmers and computer analysts to perform the hundreds of tasks that are required. These hundreds of tasks can be grouped into five major categories: (1) modifications; (2) interfaces; (3) data conversion; (4) configuring insurance products and other system parameters; and (5) comprehensive integrated testing.

9. Solcorp recommended to Alfa that Richard E. Knutson ("Knutson") of Advantage should be hired to convert Alfa's life insurance computer systems.

10. Pursuant to Solcorp's recommendation, in or around November 2001, Alfa contacted Advantage regarding performing the data conversion tasks for the Ingenium installation.

11. On or about November 27, 2001, Knutson and Mark Kimmell ("Kimmell") of Advantage traveled to Alfa's home office in Montgomery, Alabama, for the purpose of presenting their services for Alfa's consideration. Knutson and Kimmell made a Power Point

presentation to Alfa representatives at Alfa's home office in Montgomery, Alabama and provided other marketing and informational data to Alfa at this time.

12. Alfa subsequently retained Advantage to perform a four-week preliminary data conversion analysis, in which Advantage initially determined the requisite data conversion tasks and the estimated completion date.

13. Following this preliminary data conversion analysis, Alfa entered into a contract with Advantage on February 25, 2002 (the "Contract"), whereby Advantage would perform all data conversion tasks, including but not limited to, analyzing, scrubbing, translating, and converting Alfa's insurance policy data from Alfa's CFO-based system to Ingenium. The expiration date for the Contract was February 25, 2004. A copy of the Contract, including all associated schedules, is attached hereto as Exhibit 1.

14. The Contract estimated a Project End Date of September 2, 2003, and included a Fixed Price Agreement covering all initially identified tasks. *See* Exhibit 1, Schedule B at page 2. The Fixed Price Agreement provided for payment of $619,230.00 for the data conversion tasks, and stated that "Advantage shall invoice Alfa at the beginning and end of each task, as defined in Schedule B.1, 50% of each task payable at the start of the task, and 50% payable 30 days after completion and Alfa verification that each task is completed and functioning properly." *See* Exhibit 1, Schedule B at page 3.

15. The Contract is expressly limited to Advantage's performance of data conversion tasks. Advantage was hired to perform these data conversion tasks exclusively, and was not involved with any other installation tasks. Alfa and/or Solcorp were responsible for all other installation tasks, including but not limited to all modifications tasks. The respective tasks of Alfa, Solcorp, and Advantage are spelled out on a chart, which is attached hereto as Exhibit 2.

16. Solcorp employees, who were known as the "Solcorp Team" were directly involved in the overall conversion process, which was known as "the Solcorp Project," and continuously interacted with employees of Alfa and representatives of Advantage over the relevant time period.

17. Advantage began performing the data conversion tasks pursuant to the Contract and associated schedules, and was partially compensated by Alfa for the services performed pursuant to the Fixed Price Agreement.

18. Before Advantage could fully perform the data conversion tasks, Alfa and Solcorp needed to heavily modify Ingenium to support the conversion of Alfa's insurance policy data from the CFO-based system and other internal systems.

19. Advantage's performance and completion of the data conversion tasks were directly limited by Alfa's and Solcorp's completion of the modifications tasks.

20. Alfa's and Solcorp's failure to complete the modifications tasks prevented Advantage from completing all data conversion tasks, and from fulfilling their contractual obligations before the initial Project End Date of September 2, 2003.

21. Alfa agreed to execute an amendment to the Contract ("New Contract"), extending the Contract's expiration term from February 25, 2004 to December 31, 2004. *See* New Contract, attached hereto as Exhibit 3.

22. Simultaneous to the execution of the New Contract, Alfa and Advantage entered into a new Consulting Services Agreement ("Consulting Agreement"). *See* Exhibit 3, Schedule F.

23. The Consulting Agreement states that, "[d]ue to the delay of the Solcorp project, through no fault of Advantage or Alfa, not all services set forth in the Schedules were performed

5

within the time frame originally agreed upon by Advantage and Alfa." *See* Exhibit 3, Schedule F at page 1.

24. Alfa recognized that Advantage's inability to meet the initial Project End Date was caused by Solcorp's failure to complete the modifications tasks, and not due to any action and/or inaction on the part of Advantage.

25. An employee of Solcorp expressly acknowledged its failure to perform under its agreement with Alfa had caused the delay of Advantage's performance of its contractual obligations to Alfa. Thereby, Solcorp acknowledged that its projected deadlines for performance of its contract with Alfa were impracticable.

26. The Consulting Agreement provides that the revised Project Start Date of September 3, 2003 and Project End Date of August 1, 2004.

27. The Consulting Agreement also states that, "[i]f the production conversion date is delayed beyond September 1, 2004, through no fault of Advantage, a new agreement will be negotiated to cover additional days." *See* Exhibit 3, Schedule F at page 1.

28. The modifications tasks for the Ingenium installation were not completed by Alfa and Solcorp by the revised Project End Date of August 1, 2004, which was proximately or primarily caused by Solcorp's action or inaction.

29. Advantage was thereby prevented from completing the data conversion tasks.

30. In or around the beginning of June 2005, Alfa compelled Advantage's technical conversion consultant, on-site briefly to finishing the remaining tasks for a trial conversion, to leave the Alfa property, thereby terminating its contractual relationship with Advantage without the thirty (30) days prior notice required by the Contract and specifically incorporated by the New Contract. *See* Exhibit 1 at page 5, section 10; Exhibit 3 at page 1.

B JFB 711773 v1
2900506-000001 06/01/2006

31. Following this termination, on or about June 27, 2005, Advantage e-mailed a letter to Alfa listing options for continued support. Alfa never responded to that letter.

32. Alfa never paid Advantage for all of the services performed; the balance owed which totals $301,456.78.

## COUNT ONE
### Indemnity

33. Advantage adopts and incorporates paragraphs 1 through 32 as if fully set forth herein.

34. Solcorp was the proximate or primary cause of Advantage's inability to complete the conversion tasks for Alfa.

35. Advantage was without fault with regard to the delays and damages alleged by Alfa.

36. Solcorp is required to indemnify Advantage for any and all damages caused by its overall responsibility for the delays and damages alleged and sought by Alfa in its claims against Advantage.

## COUNT TWO
### Contribution

37. Advantage adopts and incorporates paragraphs 1 through 36 as if fully set forth herein.

38. To the extent that Advantage is found liable for the claims advanced by Alfa, such liability is the result, in whole or in part, of Solcorp's negligence or fault.

39. Accordingly, Advantage has a right of contribution from Solcorp for any damages awarded to Alfa.

## COUNT THREE
### Negligence

40. Advantage adopts and incorporates paragraphs 1 through 39 as if fully set forth herein.

41. Solcorp was aware that Advantage's ability to perform its obligations to Alfa under the Contract and New Contract were dependent, in whole or in part, on Solcorp's timely performance of its obligations to Alfa.

42. Solcorp had a duty to perform its obligations in a reasonable manner so as not to interfere with or delay Advantage's work under the Contract and New Contract.

43. Solcorp breached this duty by failing to perform its work.

44. As a proximate cause of Solcorp's breach, Advantage was prevented or precluded from performing its obligations under the Contract and New Contract, thereby damaging Alfa and causing damage to Advantage in the form of lost profits, diminished goodwill, unpaid invoices, and other consequential damages.

WHEREFORE, Third-Party Plaintiff Advantage demands judgment against Solcorp on its Third-Party Complaint for compensatory damages plus attorneys' fees, interest, costs, and such other, further or different relief to which Advantage may be entitled, as well as for any amount that may be awarded to Alfa against Advantage.

## JURY DEMAND

## DEFENDANT/COUNTERCLAIMANT/THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS AND DEFENSES

/s/ J. Forrest Hinton
J. FORREST HINTON

One of the Attorneys for Defendant/ Counterclaimant/Third-Party Plaintiff Advantage Consulting Group, Inc. and Defendant Richard E. Knutson

8

OF COUNSEL**:**

BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, P.C.
A Professional Corporation
420 20th Street North
Wachovia Tower, Suite 1600
Birmingham, Alabama 35203-5202
(205) 328-0480

## CERTIFICATE OF SERVICE

      I hereby certify that June 1, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, that all parties are represented by counsel to whom the CM/ECF system will send a Notice of Electronic Filing.  Pursuant to Section II(B)(1)(a) of this Court's Administrative Procedures for Filing, Signing and Verifying Pleadings in the District Court Under the Case Management/Electronic Case Files (CM/ECF) System, such notice is the equivalent of service by hand delivery.

    Mr. William P. Gray, Jr.
    Mr. Douglas N. Robertson
    Gray & Associates, L.L.C.
    3800 Colonnade Parkway, Suite 545
    Birmingham, Alabama 35243

                                            /s/ J. Forrest Hinton_____
                                            OF COUNSEL

B JFB 711773 v1
2900506-000001 06/01/2006