# EXHIBIT 1



103 W. College Ave., Suite 702, Appleton, Wisconsin, U.S.A. 54911
Phone: (920) 830-1990  Fax: (920) 830-1945

## PROFESSIONAL SERVICES AGREEMENT

THIS PROFESSIONAL SERVICES AGREEMENT (hereinafter referred to as "Agreement") is made and entered into as of the 25th day of February, 2002, by and between **ADVANTAGE Consulting Group, Inc.**, a Wisconsin corporation, with its principal office located at 103 W. College Ave., Suite 702, Appleton, WI 54911 (hereinafter referred to a "COMPANY") and **ALFA Life Insurance Corporation,** with its principal office located at 2108 E. South Boulevard, Montgomery, AL 36116 (hereinafter referred to as "CLIENT").

### WITNESSETH

That, for and in consideration of the mutual promises and covenants hereinafter contained, the parties hereto agree as follows:

### SECTION 1. SCOPE OF SERVICES

1.1   COMPANY agrees to provide CLIENT those technical assistance, products, consulting, and/or related services as are described in Schedules B.1, B.2, B.3, and B.4 attached hereto and those Schedules as are executed from time to time by both parties to this Agreement ("the Schedules"); provided, however that nothing herein shall require either party to execute any particular Schedule. Each subsequent Schedule shall be substantially in the form of Schedule "C" attached hereto and made a part hereof. Such services shall be provided in accordance with the provisions of this Agreement. In the event of any conflict between terms and conditions of this Agreement and the terms and conditions of any Schedule, the terms of the Schedule shall govern.

1.2   The scope of the COMPANY's work effort must be coordinated with the appropriate personnel designated by CLIENT and shall at all times be subject to the parameters established by CLIENT from time to time.

1.3   Ownership of, title to and all rights in and to any Programs, Source Code, or Trade Secrets resulting from COMPANY'S technical assistance, products, consulting, and/or related services hereunder, including copyright and any other proprietary right, shall at all times remain with CLIENT. All ideas, concepts, methods, know-how and techniques resulting in any Programs, Source Code, or Trade Secrets under this Agreement shall remain the sole property of CLIENT. However, any proprietary tools that have been developed by COMPANY in order to assist in the completion of tasks for CLIENT are the sole property of COMPANY. CLIENT shall not utilize COMPANY'S proprietary tools on other internal projects, nor is CLIENT permitted to give or sell these tools to any outside party.

### SECTION 2. RELATIONSHIP OF PERSONNEL

2.1   Personnel supplied by COMPANY hereunder are not CLIENT's employees. Although in retaining its supply of personnel COMPANY may contract with independent vendors and/or it may hire personnel directly onto the COMPANY payroll, for the purposes of this Agreement, all such personnel shall be deemed to be employees of the COMPANY. COMPANY shall be solely responsible for the payment of compensation to COMPANY personnel assigned to perform services hereunder. CLIENT shall not be responsible for any payments or for withholding income taxes or social security taxes or for any insurance premiums for any COMPANY employee, including worker's compensation insurance.

ADVANTAGE 000001

ALFA Prof Services Agreement         Page 1



105 W. College Ave., Suite 702, Appleton, Wisconsin, U.S.A. 54911
Phone: (920) 830-1990  Fax: (920) 830-1945

## SECTION 3. FEES, EXPENSES, TAXES

3.1   COMPANY agrees to invoice CLIENT for products, consulting and related services provided to CLIENT by COMPANY under any Schedule in accordance with the Rates and payment schedule set forth in each Schedule. Both parties may change any time and materials fees shown in any attached Schedule subject to the written agreement of both parties.

3.2   COMPANY shall invoice CLIENT at the beginning and end of each task, as defined in Schedule B.1, 50% of each task payable at the start of the task, and 50% payable 30 days after completion and CLIENT verification that each task is completed and functioning properly.

3.3   There shall be added to any charges payable by CLIENT under this Agreement amounts equal to any and all applicable taxes, however designated, levied or based on any charges payable under this Agreement for services rendered thereunder, including without limitation state and local privilege, excise, sales and use taxes paid or payable by COMPANY exclusive only of taxes based on net income. Before said taxes are added to any charges payable by CLIENT, CLIENT must consent to the payment of such taxes and such additional taxes shall then be billed by COMPANY within a reasonable time following payment of such taxes by COMPANY, and shall be due and payable by CLIENT promptly following billing thereof, whether or not such billing occurs following completion of the services thereunder. The taxes referred to above that are CLIENT'S 's responsibility are those taxes imposed by the U.S. Government, State of Alabama, or such other state that the CLIENT operates or installs the programs in as may be applicable or any of its taxing authorities.

## SECTION 4. CONFIDENTIALITY

4.1   Confidential Information shall mean all information concerning or relating to CLIENT's policyholders, payroll accounts, agents, employees, products, pricing, compensation, financial information, as well as any other information provided by CLIENT and which is disclosed by CLIENT to COMPANY pursuant to this Agreement. COMPANY will not disclose any Confidential Information to any third party or use any Confidential Information for any purpose except to perform its obligations under this Agreement. COMPANY shall restrict access to Confidential Information to those employees necessary to carry out its obligations hereunder, and shall cause its employees to use the same care and discretion with respect to CLIENT's Confidential Information that they use with respect to COMPANY's Confidential Information, but in no event less than reasonable care and discretion. COMPANY recognizes and acknowledges that a breach by it of any covenants or agreements contained in this Section, regarding the Confidential Information described in this Section, may cause CLIENT to sustain damage for which it may not have an adequate remedy at law for money damages, and therefore COMPANY agrees that in the event of any such breach CLIENT shall be entitled to seek the remedy of specific performance of such covenants and agreements and injunctive and other equitable relief in addition to any other remedy to which it may be entitled, at law or in equity. In addition to all other remedies available to CLIENT at law or in equity, COMPANY hereby indemnifies and agrees to defend and hold CLIENT harmless from and against any and all fines, suits, proceedings, claims, demands, causes of action, losses, liabilities, damages, costs, charges and/or expenses of any kind or nature (including, without limitation, reasonable legal and attorneys' fees and expenses, and all other costs and expenses incurred in investigating, preparing for or defending any proceeding, commenced or threatened, incident to the foregoing or to the enforcement of this section) arising out of or otherwise relating to or connected with COMPANY's failure to abide by the provisions of this Section with regard to the Confidential Information described in this Section. COMPANY's obligations with regard to the Confidential Information described in this Section, shall survive the completion of its obligations to CLIENT



103 W. College Ave., Suite 702, Appleton, Wisconsin, U.S.A. 54911
Phone: (920) 830-1990  Fax: (920) 830-1945

and the termination or cancellation of this Agreement, for any reason and shall not be subject to any limitation of damages provision contained elsewhere.

4.2  COMPANY agrees to abide by all applicable laws and regulations regarding CLIENT'S Confidential Information.

4.3  Each party acknowledges that Schedule A and the Non-Disclosure Agreement attached thereto are still in force and effect.

4.4  CLIENT shall not discuss any financial matter relating to this Agreement with anyone except a COMPANY representative.

## SECTION 5. PROPRIETARY RIGHTS INDEMNITY

5.1 COMPANY shall defend or settle any suit or proceeding brought against COMPANY or CLIENT on a claim that:

   a. any Programs, Source Code or Trade Secrets in whole or in part, or any Documentation furnished hereunder, or

   b. the use of any Programs, Source Code or Trade Secrets in whole or in part, consistent with COMPANY'S specifications and instructions, or

   c. the copying by the CLIENT of any Documentation, constitutes an infringement of any patent, trade mark, trade secret or other intellectual property right of any third party.

This indemnity shall only be valid if COMPANY is notified promptly and is given complete authority and information required for the defense of the suit or proceeding; provided however that a failure by the CLIENT to provide such notice to COMPANY shall not relieve COMPANY of its obligations hereunder unless COMPANY has been materially prejudiced thereby. COMPANY shall pay all damages and costs awarded therein by a court against the CLIENT.

5.2  In the event that any Program, Source Code or Trade Secrets in whole or in part furnished hereunder becomes, or in COMPANY'S opinion is likely to become, the subject of a claim for patent, copyright, trade secret, or other proprietary right infringement, COMPANY may, at COMPANY'S option and without liability or obligation:

   a. procure for CLIENT, at no additional cost to the CLIENT, the right to continue using the Programs, Source Code, or Trade Secrets or

   b. replace them or modify them to render them non-infringing without any material loss of functionality at no additional cost to the CLIENT including modifications made to any of the Programs, Source Code, or Trade Secrets by COMPANY, or

   c. in the event the options in clauses (a) and (b) are not available on reasonable commercial terms, terminate the Agreement by payment to the CLIENT of all monies paid by the CLIENT to COMPANY under this Agreement.

ADVANTAGE 000003



103 W. College Ave., Suite 702, Appleton, Wisconsin, U.S.A. 54911
Phone: (920) 830-1990  Fax: (920) 830-1945

## SECTION 6. LIABILITY

6.1  With the exception of Section 4 regarding Confidentiality and Section 5 regarding Proprietary Rights Indemnity, and as set forth in this Section, COMPANY's liability on any claim for damages arising out of this Agreement shall be limited to direct damages in an amount not to exceed the total amount paid by CLIENT to COMPANY under this contract and would exclude punitive, exemplary or consequential damages.

6.2  COMPANY shall be liable for and shall indemnify and hold CLIENT harmless against any loss or damage arising from (i) the negligence of COMPANY, its officers, employees, agents, or representatives, and (ii) the willful misconduct of COMPANY, its officers, employees, agents, or representatives.

6.3  CLIENT shall be liable for and shall indemnify and hold COMPANY harmless against loss or damage arising from (i) the negligence of CLIENT, its officers, employees, agents, or representatives and (ii) the willful misconduct of CLIENT, its officers, employees, agents, or representatives.

## SECTION 7. NON-SOLICITATION

7.1  Both parties agree that neither they nor their subsidiaries or other affiliated companies shall directly or indirectly knowingly solicit for employment, employ, or otherwise retain the staff (including contractors) of the other party during the term of this Agreement, nor for a period of one year after termination of this Agreement. Both parties also agree that neither they nor their subsidiaries or other affiliated companies shall directly or indirectly knowingly solicit for employment, employ, or otherwise retain the former staff of the other party during the term of this Agreement, nor for a period of one year after termination of this Agreement, providing that one year has not elapsed since the termination of the other party's staff's employment or contractual relationship with that party. Both parties further agree that neither they nor their subsidiaries or other affiliated companies shall directly or indirectly knowingly accept solicitation from any of the other party's current staff or contractors nor from any of the other party's former staff or contractors who have either been employed by or contracted with the other party within one year prior to the solicitation date.

However, if mutually agreed upon by the parties, and a member of either party's staff desires to become an employee of the other party, a commission will be paid to the party whose employee is hired ("hiree party"), in the amounts herein specified. These amounts will be invoiced to the hiring party on the sixtieth day (60th) day following each employee's start date with the hiring party. If an employee does not remain employed with the hiring party for sixty (60) days, no commission shall be due with respect to such employee.

If the hiree party's staff member has been consulting with the hiring party for less than two years in duration, the commission is 30% of the annual salary on the commencement date of employment by the hiring party.

If the hiree party's staff member has been consulting with the hiring party for more than two years in duration, the commission is 20% of the annual salary on the commencement date of employment by the hiring party.

ADVANTAGE 000004



103 W. College Ave., Suite 702, Appleton, Wisconsin, U.S.A. 54911
Phone: (920) 830-1990  Fax: (920) 830-1945

## SECTION 8. TERM OF AGREEMENT

8.1   This Agreement shall commence on the date first above written and shall continue in effect for two years thereafter unless and until terminated as hereinafter set forth.

8.2   In the event of material breach of this Agreement by either party hereto, the other party may (reserving cumulatively all other remedies and rights under this Agreement and in law and in equity), terminate this Agreement by giving 30 days written notice hereof by certified mail, return receipt requested. Notwithstanding anything in this Agreement to the contrary, either party hereto shall have the right to immediately terminate this Agreement, upon notice to the other, in the event of the other's insolvency, receivership, or bankruptcy; or in the event any substantial part of the other's property is or becomes subject to any levy, seizure, assignment or sale for or by any creditors or governmental agency without being released or satisfied within the (10) days thereafter.

8.3   CLIENT may terminate this Agreement and any schedule for any reason by giving sixty (60) days written notice thereof to the other party, delivered by certified mail, return receipt requested.

## SECTION 9. ASSIGNMENTS

9.1   Neither party may assign this Agreement and/or any of its rights and/or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld. This Agreement will be binding upon the parties' respective successors and permitted assigns.

## SECTION 10. NOTICES

10.1   Any notices or other communications required or permitted to be given or delivered hereunder shall be in writing (unless otherwise specifically provided here) and shall be sufficiently given if delivered by certified mail (except normal invoices referenced in Section 3.1 which must be in writing but need not be delivered by certified mail), return receipt requested, to the addresses of the parties set forth below:

COMPANY:   ADVANTAGE Consulting Group, Inc.
           103 W. College Ave. Suite 702
           Appleton, WI 54911
           Attn: Richard Knutson

CLIENT:    ALFA Life Insurance Corp.
           2108 E. South Boulevard
           P.O. Box 11000
           Montgomery, AL 36191-0001
           Attn: Bill Harper

Any notice or other communication shall be deemed to be given as of the date it is signed for in the manner specified.

## SECTION 11. GOVERNING LAW

11.1   The validity of the Agreement, the construction and the enforcement of its terms, and the interpretation of the rights and duties of the parties, shall be governed by the laws of the State of Alabama.



103 W. College Ave., Suite 702, Appleton, Wisconsin, U.S.A. 54911
Phone: (920) 830-1990  Fax: (920) 830-1945

## SECTION 12. AMENDMENT OR WAIVER OF AGREEMENT

12.1   No amendments, modifications, supplements to or waiver of this Agreement or any of its provisions shall be binding upon the parties hereto unless made in writing and duly signed by both parties. A failure of either party to this Agreement to enforce at any time any of the provisions of this Agreement, or to exercise any option which is herein provided, or to require at any time performance by either party to this Agreement of any of the provisions hereof, shall in no way be construed to be a waiver of such provisions of this Agreement.

## SECTION 13. ENTIRE AGREEMENT

13.1   This Agreement and Schedules hereto constitute the entire agreement between the parties and supersedes all previous agreements, promises, proposals, representations, understandings and negotiations, whether written or oral, between the parties respecting the subject matter hereof.

## SECTION 14. SEVERABILITY

14.1   In the event that one or more of the provisions of this Agreement shall for any reason be held to be invalid, illegal, or unenforceable, the remaining provisions of this Agreement shall be unimpaired, and the invalid, illegal, or unenforceable provision shall be replaced by a mutually acceptable provision, which, being valid, legal, and enforceable, come closest to the intention of the parties underlying the invalid, illegal, or unenforceable provision.

## SECTION 15. HEADINGS

15.1   The headings in this Agreement are for purposes of reference only and shall not limit or effect any of the terms hereof.

## SECTION 16. COUNTERPARTS

16.1   This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original, and such counterparts together shall constitute but one and the same contract, which shall be sufficiently evidenced by such original.

## SECTION 17. COMPUTER VIRUS PROTECTION

17.1   COMPANY shall install no software on CLIENT's computer equipment, without prior written authorization from CLIENT and shall take all necessary precautions, including the use of anti-computer virus software approved by CLIENT, to avoid contamination of CLIENT's equipment, computer software, computer programming language, or data, with any computer virus. If any of COMPANY's software is deemed to have a virus, the COMPANY is responsible to have the virus removed from any and all contaminated software and affected systems.

ALFA Prof Services Agreement          Page 6

ADVANTAGE 000006



103 W. College Ave., Suite 702, Appleton, Wisconsin, U.S.A. 54911
Phone: (920) 830-1990  Fax: (920) 830-1945

IN WITNESS WHEREOF, the parties hereto, each acting under due and proper authority, have executed this Agreement as of the date first above written.

ADVANTAGE Consulting Group, Inc.

By: _____

Name: Richard E Knutson

Title: President

Date: May 8, 2002

CLIENT: ALFA Life Insurance Corp.

By: _____

Name: William B. Harper, Jr.

Title: Senior Vice President, Life and Loan Operations

Date: May 8, 2002



103 W. College Ave., Suite 702, Appleton, Wisconsin, U.S.A. 54911
Phone: (920) 850-1990  Fax: (920) 830-1945

## Schedule A

**ADVANTAGE Consulting Group, Inc.**
Richard E. Knutson
President
103 W. College Ave., Suite 702
Appleton, WI 54911

CLIENT:  **ALFA LIFE INSURANCE CORP.**
William B. Harper, Jr.
Senior Vice President Life Operations/Loans
2108 E. South Boulevard  P.O. Box 11000
Montgomery, AL 36191-0001

### FIXED PRICE AGREEMENT

Services to Be Performed:   Conversion analysis, strategy and planning services.

Scope of Services:   The scope of the services performed under this schedule will be limited to the analysis and documentation of ALFA Life Insurance Corporation's (ALFA's) systems, including ALFA's CFO based system, ALFA's AS400 systems, LFPS system, and rate tables, underwriting system, annuity system, and hereafter referred to as ALFA's systems and the Ingenium system data.

ADVANTAGE Consulting Group, Inc. (ACG) will perform preliminary analysis of ALFA's systems and the Ingenium system data structures, and produce a fixed priced bid by February 15, 2002 to complete the conversion of all required data from ALFA's systems into the Ingenium system.

As a result of the analysis that ACG will perform, the following documents will be generated, discussed, and approved by ALFA management representatives:

1) A list of all important source system data tables and files currently residing in ALFA's systems, a recommendation/decision on the validity of the data fields and on which tables/files need to be converted, and the eventual method that should be used to convert the information in those tables/files. For data stores that contain historical data, a recommendation/decision will be determined that defines the portion of the history that will be converted. One large spreadsheet will be created containing this information.

2) A list of all important source data tables and files within the Ingenium system, a recommendation/decision on which tables/files need to be populated in the conversion, and which ALFA's systems files will be used to populate those Ingenium tables/files. One large spreadsheet will be created containing this information.

ADVANTAGE 000009



103 W. College Ave., Suite 702, Appleton, Wisconsin, U.S.A. 54911
Phone: (920) 830-1990 Fax: (920) 830-1945

Scope of Services (continued):

3) A comprehensive task list that will include all individual tasks that must be performed by ACG in order to properly convert all of the required data and an estimate of the number of days required to complete each task. One large spreadsheet will be created containing this information.

4) A Project Plan and Gantt chart for all of the data conversion tasks to be completed.

5) A fixed price estimate including all the expenses for all of the tasks that ACG will need to perform in order to convert the data in ALFA's systems into the Ingenium system. This will be in the form of a Word document that is based on the project tasks spreadsheet, and will include all of the calculations used to arrive at the fixed price estimates including expenses.

Project Start Date: January 14, 2002

Project End Date: February 15, 2002

Consulting Fees: $51,000.00 U.S. dollars for the entire project, payable at the end of the four-week preliminary analysis project. Price includes all expenses.

Non-Disclosure: Advantage will comply with the terms of the Non-Disclosure Agreement, attached hereto as Attachment A.

**ADVANTAGE Consulting Group, Inc.**

By: _(signature)_

Name: Richard E. Knutson

Title: President

Date: 1/17/02

**CLIENT: ALFA Life Insurance Corporation**

By: _(signature)_

Name: William B. Harper, Jr.

Title: Senior Vice President Life Operations/Loans

Date: 1/14/02

ADVANTAGE 000010

ALFA1.DOC  Page 2  1/16/2002

ATTACHMENT A TO THE FIXED PRICE AGREEMENT

NON-DISCLOSURE AGREEMENT

Advantage Consulting Group, Inc. ("Advantage"), in the course of performing its obligations under this Agreement, may receive, obtain or have access to Confidential Information. Confidential Information refers to any and all information about Alfa's customers or other information which Alfa specifically designates as confidential and/or proprietary. Confidential Information includes, but is not limited to, non-public personal financial information which includes personally identifiable financial information and any list, description or other grouping of customers, and publicly available information pertaining to them, that is derived using any personally identifiable financial information that is not publicly available. Personally identifiable financial information is any information a customer provides to Alfa to obtain a financial product or service, information Alfa otherwise obtains about a customer in connection with providing a financial product or service to that customer, and any information about a customer resulting from any transaction involving a financial product or service between Alfa and a customer. Personally identifiable financial information includes a customer's name, address, zip code, email address, phone number, credit history, social security number, date of birth and any other information that itself identifies, or when tied to the above information, may identify a customer.

Advantage shall receive and hold such Confidential Information in strict confidence and shall not disclose to any other party or use the Confidential Information other than as necessary to carry out its obligations under this Agreement or with the prior written consent of Alfa, except as otherwise required by applicable federal or state law. Advantage shall restrict access to Customer Information to those employees necessary to carry out its obligations hereunder. Advantage will take reasonable precautions to ensure compliance with this section in the course of performing its obligations under this Agreement with respect to the authorized use, protection, and security of the Confidential Information. In the event Advantage is requested or required (by oral question or request for information or documents in any legal proceeding, interrogatory, subpoena, civil investigative demand, or similar process) to disclose any Confidential Information, Advantage shall notify Alfa immediately of the request or requirement so that Alfa may seek an appropriate protective order or waive compliance with the provisions of this section. If, in the absence of a protective order or the receipt of a waiver hereunder, Advantage is, on the advice of counsel, compelled to disclose any Confidential Information to any tribunal or else stand liable for contempt, Advantage may disclose the Confidential Information to the tribunal; provided, however, in disclosing such information, Advantage shall use all necessary efforts to obtain, at the reasonable request of Alfa, an order or other assurance that confidential treatment will be accorded to such portion of the Confidential Information required to be disclosed as Alfa shall designate.

Advantage recognizes and acknowledges that a breach by it of any covenants or agreements contained in this section shall cause Alfa to sustain damage for which it may not have an adequate remedy at law for money damages, and therefore Advantage agrees that in the event of any such breach Alfa shall be entitled to the remedy of specific performance of such covenants and agreements and injunctive and other equitable relief in addition to any other remedy to which it may be entitled, at law or in equity. In addition to all other remedies available to Alfa at law or in equity, Advantage hereby indemnifies and agrees to defend and hold Alfa harmless from and against any and all fines, suits, proceedings, claims, demands, causes of action, losses, liabilities, damages, costs, charges and/or expenses of any kind or nature (including, without limitation, legal and attorneys' fees and expenses, and all other costs and expenses incurred in investigating, preparing for or defending any proceeding, commenced or threatened, incident to the foregoing or to the enforcement of this section) arising out of or otherwise relating to or connected with Advantage's obligations under this Non-Disclosure Agreement. Advantage's obligations under this Agreement shall survive the completion of its obligations under the Fixed Price Agreement and the termination or cancellation of the Fixed Price Agreement, for any reason and shall not be subject to any limitation of damages provision contained elsewhere.

*REK*
1/17/02

ADVANTAGE 000011




103 W. College Ave., Suite 702, Appleton, Wisconsin, U.S.A. 54911
Phone: (920) 830-1990  Fax: (920) 830-1945

## Schedule B

**ADVANTAGE Consulting Group, Inc.**
Richard E. Knutson
President
103 W. College Ave., Suite 702
Appleton, WI 54911

CLIENT: **ALFA Life Insurance Corp.**
William B. Harper, Jr.
Senior Vice President
Life and Loan Operations
2108 E. South Boulevard
Montgomery, AL 36116

## FIXED PRICE AGREEMENT

**Services to be Performed:** Data conversion services, including analysis, documentation, issue resolution, programming and testing.

COMPANY acknowledges that ownership of, title to and all rights in and to any Programs, Source Code or Trade Secrets resulting from COMPANY'S technical assistance, products, consulting, and/or related services hereunder, including copyright and any other proprietary right, shall at all times remain with CLIENT. All ideas, concepts, methods, know-how and techniques resulting in any Programs, Source Code or Trade Secrets under this Agreement shall remain the sole property of CLIENT.

**Scope of Services:** Conversion of the underlying data of the life insurance policies administered by ALFA Life Insurance Corp. (ALFA) on their current systems (approximately 530,000 policies). These systems include a CFO based mainframe system, AS400 systems, an LFPS system, rate tables and an underwriting system, hereafter referred to as ALFA's systems. These policies will be converted into the INGENIUM v6.3.1 software package.

ADVANTAGE Consulting Group, Inc. (ADVANTAGE) will convert all necessary policy data from ALFA's systems to Ingenuim v6.3.1 to maintain the integrity and accuracy of all policy data required to have and maintain historical policy information on all policies converted. It is understood that ADVANTAGE Consulting Group, Inc. (ADVANTAGE) will not convert all of the data in ALFA's systems into the Ingenium system. ADVANTAGE will assist ALFA in manually converting A&H policies, Cancer policies, Group Life policies, and Annuities (See Attached Schedule D).



103 W. College Ave., Suite 702, Appleton, Wisconsin, U.S.A. 54911
Phone: (920) 830-1990  Fax: (920) 830-1945

It is also understood that ADVANTAGE will not perform any software modifications in the Ingenium v6.3.1 system in order to support product or processing features related to the converted policies. Therefore, ADVANTAGE cannot be held responsible if there are any problems that are not a direct or indirect result of errors made in the data conversion routines. In addition, **it is ALFA's responsibility to fully test all converted data**, and inform ADVANTAGE of any problems encountered, at least four weeks prior to the actual conversion date.

In order to clearly define the exact tasks that ADVANTAGE will be responsible for performing under this Schedule B agreement, the tasks are listed in the attached Schedule B.4 **ALFA LIFE DATA CONVERSION TASKS FOR CFO POLICIES ONLY** spreadsheet along with Schedules B.1, B.2, B.3 detailed spreadsheets. If ALFA desires to have ADVANTAGE perform any extra tasks outside of this spreadsheet, there would be additional fees invoiced over the agreed upon fixed price amount.

After the conversion has taken place, ADVANTAGE will remain on this project for a period of four weeks through the end of a month-end closeout, to resolve any post-conversion problems encountered, and to document and organize all information related to the data conversion. After this four-week period, if any post-conversion problems are not resolved, ADVANTAGE will remain on the project for an additional 2 weeks to resolve those problems, at no cost. After all post-conversion problems are resolved, ADVANTAGE will turn over all information regarding the conversion to ALFA and ADVANTAGE's assignments and responsibilities are concluded.

During the course of the project, if the Project End Date is changed to a date later than September 2, 2003, ADVANTAGE reserves the right to invoice additional fees over the agreed upon fixed price amount. The nature and amount of these fees will be jointly determined if this occurs. ADVANTAGE will not have the right to charge additional fees over the agreed upon fixed price amount if the Project End Date is changed due to actions and/or inactions on the part of ADVANTAGE, and/or if the delay is due to causes beyond CLIENT'S reasonable control and without CLIENT'S fault, which could not have been foreseen, or if reasonably foreseen, could not have been prevented.

Project Beginning Date:     February 25, 2002

ADVANTAGE 000069

ALFA Schedule B                    Page 2

4/19/2002



103 W. College Ave., Suite 702, Appleton, Wisconsin, U.S.A. 54911
Phone: (920) 830-1990  Fax: (920) 830-1945

Project End Date:         September 2, 2003

Scheduled
Consulting Fees:          $619,230.00 U.S. dollars for the entire project. ADVANTAGE shall invoice ALFA at the beginning and end of each task, as defined in Schedule B.1, 50% of each task payable at the start of the task, and 50% payable 30 days after completion and ALFA verification that each task is completed and functioning properly.

Expense Amounts:          All travel expenses incurred during the course of this project are included in the fixed price amount.

In addition, any software needed to connect to ALFA's computers will be supplied to ADVANTAGE at no cost.

**ADVANTAGE Consulting Group, Inc.**          CLIENT

By: _Richard E. Knutson_                       By: _William B. Harper_

Name: Richard E. Knutson                       Name: William B. Harper, Jr.

Title: President                               Title: Senior Vice President, Life and Loan Operations

Date: May 8, 2002                              Date: May 8, 2002

ADVANTAGE 000070

ALFA Schedule B                 Page 3                        4/19/2002